UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NEW YORK STATE CITIZENS'
COALITION FOR CHILDREN,

          Plaintiff,

v.

ROBERTO VELEZ, Commissioner of the
New York State Office of Children &
Family Services, in his official capacity,

          Defendant.
---------------------------------------------------------X

DECISION & ORDER
10-CV-3485 (WFK) (RER)

**WILLIAM F. KUNTZ, II, United States District Judge:**

The New York State Citizens' Coalition for Children (the "Coalition" or "Plaintiff") is a New York nonprofit organization whose mission is to advocate for and provide support to foster parents. On July 29, 2010, Plaintiff filed suit against the Commissioner of the New York State Office of Children & Family Services ("Defendant"), alleging New York State's basic foster care reimbursement rates do not comply with the Adoption Assistance and Child Welfare Act ("CWA"), 42 U.S.C. §§ 670–679c and seeking declaratory and injunctive relief. *See generally* Compl., ECF No. 1. On July 17, 2014, this Court issued a Decision and Order granting Defendant's motion to dismiss Plaintiff's Complaint, ECF No. 66, which Plaintiff appealed, *see* ECF No. 68. On October 29, 2015, the Second Circuit issued a summary order remanding the case with instructions that this Court "address the disputed issue of Article III standing." *N.Y. State Citizens' Coal. for Children v. Velez*, 629 F. App'x 92, 94–95 (2d Cir. 2015). This Court referred the question of standing to Magistrate Judge Ramon E. Reyes, Jr. After considering testimony from an evidentiary hearing on January 28, 2016, as well as the parties' proposed findings of fact and conclusions of law, ECF Nos. 76 & 77, Magistrate Judge Reyes issued a Report and Recommendation ("R&R") on November 7, 2016, recommending the Court find Plaintiff has Article III standing, ECF No. 78. Defendant filed Objections to the R&R on November 21, 2017, Objections, ECF No. 79, and Plaintiff filed its response to the Objections on December 13, 2017, Resp., ECF No. 81. After a *de novo* review of the record, the Court ADOPTS the R&R in full.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case, which are detailed in Magistrate Judge Reyes's R&R.

—1—

## LEGAL STANDARD

In reviewing a report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court is "permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections are not facially erroneous." *Norman v. Metro. Transp. Auth.*, 13-CV-1183, 2014 WL 4628848, at *1 (E.D.N.Y. Sept. 15, 2014) (Matsumoto, J.). When a party raises a specific objection to a report and recommendation, however, the Court must conduct a *de novo* review of the contested portions. *Id.*; *cf. Barratt v. Joie*, 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (Swain, J.) ("When a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."). Furthermore, even on *de novo* review, "a district judge will nevertheless 'ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.'" *Kennedy v. Adamo*, 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (Vitaliano, J.) (quoting *Haynes v. Quality Markets*, 02-CV-0250, 2003 WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003) (Scott, J.)).

## DISCUSSION

On remand from the Second Circuit, Magistrate Judge Reyes concluded that Plaintiff has standing to bring its claims. R&R at 8. Defendant's Objections primarily contest the Magistrate Judge's determination that Plaintiff has suffered, and is likely to continue to suffer, a concrete injury. *See generally* Objections. After considering Defendant's Objections, conducting a *de novo* review of the contested portions of the R&R, and reviewing the uncontested portions for clear error, the Court ADOPTS the R&R in its entirety.

Article III standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (explaining "threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'").

Ordinarily, an organization may sue either "on behalf of its members, in which case it must show, *inter alia*, that some particular member of the organization would have had standing to bring the suit individually," *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012), or "in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," *Warth*, 422 U.S. at 511. But Second Circuit law is clear that, in actions brought pursuant to 42 U.S.C. § 1983, organizations "do[] not have standing to assert the rights of [their] members" and must "independently satisfy the requirements of Article III standing as enumerated in *Lujan*." *Nnebe v. Daus*, 644 F.2d 147, 156 (2d Cir. 2011); *see also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 388 (2d Cir. 2015) (explaining organizational plaintiffs suing on their own behalf "must independently satisfy the requirements of Article III standing").[1] Because Plaintiff is an organization that "seeks declaratory and injunctive relief under 42 U.S.C. § 1983," Compl. at 2, it must prove it satisfies

---

[1] To the extent that Defendant argues Plaintiff cannot have standing without an individual foster parent as a named plaintiff, he is quite simply wrong on the law, as numerous Second Circuit decisions make abundantly clear. *E.g.*, *N.Y. Civil Liberties Union*, 684 F.3d at 294–95 (finding standing in § 1983 action where organization was sole plaintiff).

each requirement of Article III standing without reference to the individual standing of its members.

I. **Injury**

The Second Circuit directed this Court to consider, on remand, whether Plaintiff adequately alleged injury—specifically, whether the Coalition suffered some "'perceptible opportunity cost' associated with the New York State foster care program." *Velez*, 629 F. App'x at 94–95. Magistrate Judge Reyes determined Plaintiff had established an injury-in-fact because it had shown that: (1) it spent 100 hours "responding to phone calls from foster parents unable to provide for their children under the current minimum basic rate"; (2) it was "hardly speculative to expect existing reimbursement rates to remain unchanged" or "to expect the behavior of foster parents to continue unchanged"; and (3) "[a]bsent some change, it is clear that . . . [foster parents] will continue contacting the Coalition for advice and assistance." R&R at 6–8. The Court agrees.

"The Supreme Court has held that an organization establishes an injury-in-fact if it can show that it was 'perceptibly impaired' by defendant's actions." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 15-CV-2914, 2017 WL 3596995, at *3 (2d Cir. Aug. 22, 2017) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Consistent with this holding, the Second Circuit has made clear that "only a 'perceptible impairment' of an organization's activities is necessary for there to be an 'injury in fact.'" *Nnebe*, 644 F.3d at 157 (quoting *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993)). "[W]here an organization diverts its resources away from its current activities, it has suffered an injury that has been repeatedly held to be independently sufficient to confer organizational standing." *Oyster Bay*, 2017 WL 3596995, at *4; *see also Nnebe*, 644 F.3d at 157

(explaining "expenditure of resources that could be spent on other activities" constitutes injury). Finally, where, as here, a plaintiff seeks only declaratory and injunctive relief, the asserted injury must not be speculative. *See, e.g., Knife Rights*, 802 F.3d at 388.

The record supports the Magistrate Judge's finding that the resources Plaintiff expends advising and assisting foster parents with regard to inadequate reimbursement rates constitutes an injury-in-fact. Plaintiff has shown it: (1) spends a nontrivial amount of time providing such advice and assistance, *see* Gasior Decl. Ex. 1 ("Tr."), at 35:22–24, ECF No. 77-1 (Transcript of Hearing Before Magistrate Judge Reyes); *cf. Nnebe*, 644 F.3d at 157 (finding, for purposes of standing, an organization incurs "some perceptible opportunity cost" even where it only counsels a few individuals each year); (2) expends limited resources, which would otherwise be spent on other activities relevant to Plaintiff's mission, on this advice and assistance, *see* Tr. 33:5–13, 35:25–36:19; *cf. Nnebe*, 644 F.3d at 157 (explaining "expenditure of resources that could be spent on other activities" is relevant to standing inquiry);[2] and (3) is likely to continue expending resources in this manner absent the requested relief, *see* Tr. 30:13–31:11, 39:11–40:17. And although it is true that New York's reimbursement plan allows local social services districts to determine their own reimbursement rates, the State does not reimburse districts beyond the maximum reimbursement rate that Defendant sets. Gasior Decl. Ex. 5, at 7–9. It is therefore likely, not merely speculative, that local social services districts will continue to set less-than-adequate reimbursement rates—meaning it is also likely, not speculative, that Plaintiff will necessarily continue to expend resources on providing advice and assistance to foster parents—

---

[2] Of course, the fact that the expenditures Plaintiff alleges constitute an injury are also consistent with Plaintiff's mission does not defeat standing. *E.g., Nnebe*, 644 F.3d at 167 ("[S]o long as the economic effect on an organization is real, the organization does not lose standing simply because the proximate cause of that injury is 'the organization's noneconomic interest in encouraging [a particular policy preference].'" (quoting *Havens*, 455 U.S. at 379 n.20)).

unless Defendant is made to comply with the CWA, including by implementing a minimum reimbursement rate and generally setting rates that are adequate.

Through what the Court construes as two distinct objections to the R&R, Defendant attempts to characterize Plaintiff's injury—which the Magistrate Judge found to be "concrete, clearly defined, and ongoing," R&R at 7—as "largely speculative," Objections at 3–7. First, Defendant endeavors to cast doubt on whether it is likely, as opposed to speculative, that foster parents will need to continue contacting Plaintiff for advice and assistance. Objections at 3. In sum and substance, Defendant's argument is that reimbursement rates have increased since the suit was filed and they might increase again—perhaps never to the level Plaintiff seeks through this litigation, but to a level that theoretically could meet foster parents' needs—such that Plaintiff's advice and assistance will no longer be needed. *See id.* at 3–4. The Court finds this hypothetical unavailing.

As an initial matter, Defendant advances this theory for the first time in his Objections, and it is well settled that "a litigant is not allowed to oppose a magistrate's Report and Recommendation by suddenly asserting new arguments that were not presented to the magistrate originally." *Kennedy*, 2006 WL 3704784, at *3. Furthermore, Defendant's submissions to the Magistrate Judge included both (1) a declaration in which David Haase stated "that the reimbursement rate has been 'repeatedly enhanced over the years,'" Def.'s Proposed Findings of Fact at 8 n.8, ECF No. 77; Gasior Decl. Ex. 6, ECF No. 77-1; and (2) an argument section advancing the theory that Plaintiff's asserted injuries are speculative, but for reasons unrelated to changing reimbursement rates, Def.'s Proposed Findings of Fact at 16–18. It is therefore clear that Defendant "could have made this argument to Judge Reyes, [but] chose not to, [and so] the

unless Defendant is made to comply with the CWA, including by implementing a minimum reimbursement rate and generally setting rates that are adequate.

Through what the Court construes as two distinct objections to the R&R, Defendant attempts to characterize Plaintiff's injury—which the Magistrate Judge found to be "concrete, clearly defined, and ongoing," R&R at 7—as "largely speculative," Objections at 3–7. First, Defendant endeavors to cast doubt on whether it is likely, as opposed to speculative, that foster parents will need to continue contacting Plaintiff for advice and assistance. Objections at 3. In sum and substance, Defendant's argument is that reimbursement rates have increased since the suit was filed and they might increase again—perhaps never to the level Plaintiff seeks through this litigation, but to a level that theoretically could meet foster parents' needs—such that Plaintiff's advice and assistance will no longer be needed. *See id.* at 3–4. The Court finds this hypothetical unavailing.

As an initial matter, Defendant advances this theory for the first time in his Objections, and it is well settled that "a litigant is not allowed to oppose a magistrate's Report and Recommendation by suddenly asserting new arguments that were not presented to the magistrate originally." *Kennedy*, 2006 WL 3704784, at *3. Furthermore, Defendant's submissions to the Magistrate Judge included both (1) a declaration in which David Haase stated "that the reimbursement rate has been 'repeatedly enhanced over the years,'" Def.'s Proposed Findings of Fact at 8 n.8, ECF No. 77; Gasior Decl. Ex. 6, ECF No. 77-1; and (2) an argument section advancing the theory that Plaintiff's asserted injuries are speculative, but for reasons unrelated to changing reimbursement rates, Def.'s Proposed Findings of Fact at 16–18. It is therefore clear that Defendant "could have made this argument to Judge Reyes, [but] chose not to, [and so] the

court need not consider it." *Santiago v. City of New York*, 15-CV-0517, 2016 WL 5395837, at *3 (E.D.N.Y. Sept. 26, 2016) (Garaufis, J.).

Even assuming, *arguendo*, that Defendant's first objection had been properly raised, it is not an objection to *standing*, which is the focus of this Decision, because it concerns the *legal merits* of the action. Specifically, the objection, fundamentally, is to the rate Plaintiff contends is adequate as opposed to whether Plaintiff "is the wrong individual to bring these legal claims," and it is therefore "not properly understood as [a] standing argument[]" and must be set aside. *Curtis v. Cenlar FSB*, 13-CV-3007, 2013 WL 5995582, at *2 (S.D.N.Y. Nov. 12, 2013) (Cote, J.); *cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (explaining that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice").

Second, Defendant questions whether Plaintiff's injury is likely, as opposed to speculative, under *Knife Rights*. Objections at 4. Specifically, Defendant argues the Magistrate Judge failed to take into account the fact that Plaintiff's injury is "dependent upon the actions of a third party," and thus improperly distinguished from *Knife Rights*.[3] *Id.* at 4–5 (explaining reimbursement rates "depend upon the independent action of third parties—the [local social

---

[3] But *Knife Rights* is not to the contrary. In that case, the Second Circuit determined that the organizational plaintiffs did not have standing to sue the City of New York and the New York County District Attorney for unconstitutionally applying a law criminalizing the possession of "gravity knives." *Knife Rights*, 802 F.3d at 379. The Second Circuit explained that, because the suit was for injunctive relief and the organizational plaintiffs themselves did not suffer any threat of prosecution, the organizational plaintiffs would have had to "show that both anticipated expenditures and ensuing harm to their organizations' activities are 'certainly impending,'" but they "ha[d] not even attempted to make such a showing." *Id.* at 388–89 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). The same cannot be said of Plaintiff here, as discussed *supra*. Assuming *Knife Rights* turned on the organizational plaintiffs' injury being too "speculative because it depended on," *inter alia*, "the independent actions of a third party, law enforcement arresting and prosecuting the plaintiff's organization members," R&R at 7, the instant case is distinguishable. Reimbursement rate-setting by local social services districts cannot be deemed an "independent action[] of a third party" because the districts rely on Defendant for the funds necessary to reimburse foster parents, as discussed *supra*. Thus, even under a reading that is generous to Defendant, *Knife Rights* is not controlling.

services districts] who actually administer foster care programs and set their own foster care rates"). The Court finds this second objection as unpersuasive as the first.

In sum, having conducted a *de novo* review,[4] the Court finds, for the reasons discussed above, that Defendant's objection fails because it is hardly speculative to expect that the local social services districts will not provide the reimbursement rates Plaintiff argues are necessary unless Plaintiff is granted the relief it seeks.

## II. Traceability and Redressability

Because Defendant does not object to the Magistrate Judge's findings on traceability and redressability, the Court assesses whether those sections of the R&R were "facially erroneous," *Norman*, 2014 WL 4628848, at *1, and determines they are not. There is more than sufficient evidence in the record proving that, as to traceability, foster parents are making phone calls because of inadequate reimbursement rates; and as to redressability, the need for these calls would be negated by the relief Plaintiff requests.

---

[4] Plaintiff is correct that the Court may review the R&R for clear error on this point, as Defendant largely copied and pasted, often word-for-word, his argument to the Magistrate Judge into his Objections to this Court. *Cf. Blasters, Drillrunners & Miners Local 29 v. Trocom Constr. Corp.*, 10-CV-4777, 2012 WL 1067992, at *2 (E.D.N.Y. Mar. 29, 2012) (Matsumoto, J.) (explaining that, where "objections to a Report and Recommendation merely rehash arguments presented to the Magistrate Judge, the standard of review undertaken by the District Court is not *de novo* but clear error"). *Compare* Def.'s Proposed Findings of Fact at 17–18, *with* Objections at 6–7. The Court nevertheless reviewed portions of the R&R *de novo*, and reached the same conclusion.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS the R&R in full. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 78.

**SO ORDERED.**

/s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2017
      Brooklyn, New York